Today's cases will be called, as previously announced, and the times will be as allotted to counsel. The first case today is number 25-1934, United States v. David Finnerty. At this time, would counsel for the appellant please come to the podium and introduce himself on the record to begin? Good morning. Martin Weinberg, along with my co-counsel, Michael Pabian, on behalf of the appellant, David Finnerty. I would request to reserve two minutes. You may. And I intend to argue first the instruction issue, which is subject to plain error review, and then transition to the evidence, the 404B issue, which is subject to an abusive discretion standard of appellate review. When you say the instruction issue, you mean issue two in your brief? Yes. Okay. The trial court's instruction on the jurisdictional issue of 1519 failed to provide the jury with an informed basis for how to determine whether the subject matter of an arrest report done by a local transit authority officer who struck, you know, the underlying offense was the striking of a citizen three times on the leg, causing no medical injury, no evidence of any racial or ethnic or civil right bias issue. Whether or not this incident was within the federal authority and jurisdiction of an agency, here the FBI, as the statute required, because if it was not, it constitutes a quintessential state or local law enforcement contact. Here there was an eviction by a transit officer at the end of the hours of a train station. At footnote eight of page 34 of our appellate brief, we cite statistics showing that on a daily basis, there's 27,000 or more arrests a day across the country. When you go to the DOJ Bureau of Justice Statistics, it shows that civil rights investigations occur maybe 300 times yearly, and that they constitute in the years in question either 79 or 54 different federal civil rights prosecutions, meaning the enormous amount of arrests and stops and frisks and contacts between law enforcement and people that could cause violence, that could include violence, are simply not investigated by the FBI and not subject to federal prosecution. The facts of this case show no indicia of racial bias, no injury caused by excessive force, yet the evidence was that the force used did violate transit authority guidelines, but there was no evidence as to what, if any, guidelines the FBI had in terms of its criteria for establishing federal jurisdiction. What framework would you use, do you propose that we should use? I would use two frameworks that were absent in this case and in this instruction, Your Honor. The first is to provide a jury with the elements of the underlying federal statute, the civil rights statute, which includes willfulness, and to provide the jury with some education as to when the FBI asserts authority and investigates what otherwise is these daily contacts, which include handcuffing and arrests and stop and seizures. This jury had no understanding, had no evidence, had no instruction, which is intended to inform the jury, the historical function of instructions, as to how they apply their fact-finding to the law. It seems you might be equating the possession of jurisdiction with the exercise of jurisdiction. There are hundreds of thousands of speeding incidents on the main turnpike each year. State troopers only stop so many, a small percentage of that, and yet I would venture to say that the state troopers have jurisdiction over all of them, even though they don't exercise that jurisdiction. Understandably, there is wide, broad, historic state and local jurisdiction over most crimes. Federal jurisdiction is the exception, and this statute lacks any of the limiting principles of 1512 and the Supreme Court's decision in Fowler where they said in order to have an obstruction case under 1512 to prevent communication, you needed a reasonable likelihood of federal involvement. 1519 contains no limiting principles similar to that, but the instructions still failed in two ways. Can I just—so that's sort of your argument in your first issue. Yes, Your Honor. But it seems to be bleeding into your argument on the second issue. Do we have to accept your premise on 1519 to find for you on the jury instruction issue? No, because the jury instructions failed in two separate ways. First, the district judge instructed on what was possibly a civil rights violation, and the word possible has no limitation. Everything is possible. It's possible that a stop and frisk with no excessive violence possibly could be a civil rights violation. On a continuum, there was no instruction as to what the standard was for the likelihood of federal jurisdiction. Is it almost never? Is it probable? Is it improbable? But you don't have to— So where are you getting that he should have— I think this gets back to Judge Howard's question, that the instructions should have talked about the likelihood of FBI involvement here? I think it's the flip side of using the word possibly. So it's not case law. It's the specific word that he used. I'm in relatively uncharted waters. There was no request. There was no objection. So I'm in plain error review. But to not have something beyond the instruction given, to not have some instruction as to what are the elements of a civil rights violation, not to have some understanding for a jury to apply what is the federal, not the transit authority, but the federal standards for excessive force, your jury had no way to determine whether these facts, which were relatively benign— this is not your paradigmatic federal case, the Floyd case, the Rodney King case. This is an unfortunate use of force, but they evict people from trains at 2 a.m. on a regular basis. You correctly noted that we're on plain error review on this issue, and you've noted that the waters here are uncharted. Doesn't that seem to preclude a finding of clear error under plain error review under our jurisdiction? It would except for the difference between the statute, which says there needs to be federal jurisdiction, there needs to be FBI agency authority, and the instruction which said possibly, possibly dilutes the gatekeeping to federal jurisdiction. It provides the jury with a limitless number of possibilities. Anything is possible. And because the judge unfortunately inserted the word possible before the basis for FBI jurisdiction, more was required. And the more that I contend is required is to provide the jury with a roadmap as to how to apply the law 1519 and its federal jurisdiction to the facts of this case. And the facts of this case are really heartland state. And, in fact, the principal, Mr. Bartlett, was prosecuted in the state, not federally. Mr. Weinberg, can I get your reaction to this statement or question? I'll try to put it in the form of a question.  Given that the FBI does not traditionally investigate all of these or even a substantial percentage of these types of matters, doesn't it create an imperative for the federal government to prosecute supervisors who make it even harder for the FBI to investigate these cases? Yes. That would be hoped for, that the federal government, the federal courts, would provide some limitation on federal authority over what is otherwise state or local activity. And here the contention is in terms of putting it into the legal framework. But it seems to me that you're suggesting that the type of conduct that was engaged in here by the officer on the scene is such that this is not the type of case the FBI would typically be looking at. But we don't really know which cases the FBI would be looking at, especially when the supervisor is at least alleged to have engaged in a cover-up themselves. So isn't there an even greater imperative from the federal perspective to investigate and prosecute supervisors who are doing this? Not if they're... Even if you assume a fabrication of a police report, if it was a police report about a matter that was not within federal authority or jurisdiction, then 1519 is inapplicable. But there are state and local courts to prosecute police officers, and they should prosecute them if they fabricate police reports. It's not the job of the federal government to prosecute every police report where a prosecutor believes there's falsity. But that isn't the issue, is it? The issue is, is it within the federal jurisdiction? And I'm having trouble understanding how a police supervisor's falsification of arrest reports to conceal an abuse of the rights of the defendant is not within the jurisdiction of the FBI. Because the jurisdiction rests on the underlying incident that is being reported. It doesn't rest on the report. Here, this does not seem to be relatively benign. Maybe the original use of force was lower down on the scale of abuse of force cases that we see. But when you have one of the bulwarks against that sort of abuse signing on to help cover up the abuse, again, I can't imagine the FBI would show up and someone would say, this is not in your jurisdiction, and they would have to head home. Again, I think the burden was on the government to prove more than they did, and the burden was on the court to instruct differently than they did. Because the FBI doesn't have authority over every intersection of a police officer and a citizen. It doesn't have jurisdiction over every arrest, which implicitly includes force, and it concomitantly doesn't have jurisdiction over every police report if written about what was a state or local offense. And I think the court's instructions failed to give the jury its historic guidance as to how to apply. If I could switch in the time allotted to the evidence issue, which is on a more traditional framework, that during the cross-examination of Sergeant Finnerty, during the final argument, the government wittingly or unwittingly, and I suggest unwittingly, a very experienced prosecutor, strayed into the heartland of propensity. Because they never argued that Sergeant Finnerty filed 24 use of force reports, and they were truthful, and that's why he never got sanctioned by the supervisors. There was a constant refrain that he knew how to file reports. The cross-examination of Sergeant Finnerty focused on that. They said you had experience justifying the use of force 24 times. You knew how to do it, how to justify the use of force. You did it 24 times, and it was all approved based on what you put in the report. Same with final argument where they talked about he knows how to use words. The propensity here is 24 times he used violence. So this is essentially a, I mean, it seems to me we're talking about 403 more than 404B. I understand it's both, but let me just ask this about 403. This is not a trap. What's the right number if there are? The right number is to have testimony about the fact that he had experience, and the government, without dispute, had testimony of Officer Gonzalez. They're expert. What would that testimony look like? I mean, just that statement isn't going to provide the full picture. Officer Gonzalez said he had personal experience with Sergeant Finnerty. Finnerty knew the guidelines, knew how to write use-of-force reports. In fact, other officers went to Finnerty for advice. How about the word countless or numerous? What are you suggesting? I'm not accepting your substitute, so give me another one. What I'm suggesting is testimony about the fact that there were 24 use-of-force reports was admitted without objection from the supervisor, Deputy Superintendent Reynolds. The government didn't need more than the testimony because it wasn't disputed by the defense. It gave the government the argument that Sergeant Finnerty knew about the guidelines, knew about the protocols, knew how to write reports. By putting the exhibits in which showed kicking and punching and use of baton and arm holds and striking in the knee, the jurors were invited to review these reports, and it had a double propensity. One, it established Sergeant Finnerty as a person that used violence 24 times over a decade in contrast to Bartlett, who used it twice over multiple decades. Therefore, the jury could have inferred a person who was violent might be more likely to help someone else who's violent. Do you have a problem on that issue because of the cautionary instruction the judge gave to the jury? The cautionary instruction, although intended as a classic 404B instruction, how you don't use it for propensity, invited the jurors to go look at the content of these 28 reports, which included all this evidence of violence. He said, we're not here to judge Sergeant Finnerty and whether he did anything wrong, but he told the jury, you can go look at them, you can search for phrases and words, which the government didn't even contend at the end during trial was the purpose of this admission. But the other propensity is the propensity that was suggested by the government and that was underscored by these reports, which is that not that Finnerty didn't use force illegally 24 times, but they knew how to write reports, true or not. And that's the exact propensity that 404B protects us against, which is that it would have been in his character to help someone else write a 29th report if on 28 occasions he would use false explanations to try to justify force. And the government didn't go the full length and argue propensity, but their arguments suggested to a jury that you don't have to find that Sergeant Finnerty didn't use force illegally 24 times. You have to find that he knew how to draft reports to convince supervisors not to sanction him and that that is one step away from aiding and abetting Bartlett in his authoring of the 29th report. Your time is up. Thank you. Thank you, Your Honor. At this time, would counsel for the appellee please introduce himself on the record to begin? Good morning. Donald Lockhart for the government, and may it please the court, I'll start first with the instructional issue and then work to the 403 issue. On the instructional issue, the overwhelming focus of the opening brief was a contention that the district court had essentially taken an element from the jury in violation of Gowden. There was a subsidiary point in the opening brief, which is now the focus of argument, that says essentially, well, the judge should have instructed essentially on the elements of a 242 civil rights violation, including the willfulness element, so the jury would know sort of what an excessive force case is all about. That second and subsidiary argument from the opening brief, which is now I think the exclusive focus of argument, is rebutted several ways. First of all, we're on plain error review. There has to be an obvious error. There is none. Second, the argument overlooks the district court's assessment that there was substantial and essentially uncontradicted, I'm quoting the district court, evidence that the use of force here was unjustified. So this is not a case at the margins where there's any sort of argument over whether the use of force was excessive. The evidence, including the video, which you can watch, depicts a very savage, brutal baton beating in this case, and there was no contention that that was proper or not excessive. So that sort of informs, I think, the plain error analysis of whether a judge was required under circumstances like this, sua sponte, to instruct the jury on sort of more about what excessive force entails. There's also a suggestion in the defense argument that the FBI can only investigate excessive use of force in a situation where it's clear right from the get-go that all the elements of the statute have been satisfied. Of course, that's not how investigations work, and that's why the judge used the word possible in the instruction. The instruction is, the FBI has the authority and jurisdiction to investigate possible civil rights violations, including the use of excessive force by police officers. The only work the word possible is doing in that sentence is just accounting for the fact that the way investigations work is there's allegations, there are things that need to be looked into, and then there's a determination at the end whether we think the elements have been met. The idea that the FBI doesn't look into anything until right from the get-go there's proof of all the elements is just a wrong way of looking at things. Could you address your position on sort of the first issue and then specifically how you see that in light of Gowden and also the Medina case? All right, so are you referring to the sufficiency issue? No, I'm sorry, the first, sort of the defense's first argument on the jury instruction. Oh, okay, the Gowden argument that was made in the opening brief but not an oral argument. Yes. Okay, so that argument is essentially that the judge took away the entire jurisdictional element from the jury, which is not the case. The sentence that I just quoted, the FBI has authority and jurisdiction to investigate excessive force prosecutions, that's a statement of law. That is a statement concerning the way the statutes are framed. 242 of Title 18 and the statutes that give the FBI authority to investigate federal offenses, that's not a factual or even a mixed factual issue. It's a straight-up legal argument. And the jury then was left to find the factual issue of whether the matter at issue here involved an excessive use of force or whether it was that sort of matter. How would you contrast the instruction given here with the one given in Gowden? So in Gowden, the district court judge took away an entire element, the materiality element of 1001. It told the jury that the defendant's false statements or the alleged false statements were material. It just stripped away the entire legal and factual nature of the element. So when the Supreme Court in Gowden is talking about mixed questions of fact and law in this context, that's the sort of mixed question of fact or law that they're driving at. This initial issue about whether the FBI has jurisdiction to investigate excessive force claims, that is just a pure legal statutory question. And then the next question for the jury is simply, was this arrest report such a matter? And on that issue, since we're on plain error review, don't we have a third prong issue here? And it's unclear how the jury could possibly have found this wasn't within the jurisdiction. Exactly. And indeed, Your Honor, the defense all but concedes in its briefing that a finding by the jury on this issue would have been inevitable. So, I mean, I don't see how they survive the third prong, even if you somehow posit that there's an obvious Sixth Amendment violation in the way the judge crafted this instruction. But I would like to turn, unless you have questions about the instructional issue, to the 403 issue. And here the point is that the evidence concerning Mr. Finnerty's prior proper uses of force and prior proper reporting of that force was highly relevant to the two mens rea issues in this case. We had to show that he knowingly covered up or falsified records, number two, with the intent to impede, obstruct, or influence. Now, the fact that he has, in 24 prior instances, properly used force, properly reported that force, and knows the sort of language that needs to be used and the justifications that need to be used in these reports to successfully persuade superiors that the use of force was proper, speaks powerfully to his intent in this case as he made this redlined, falsified version of an arrest report, while simultaneously, in the act of doing that, consulting the use of force policy at issue here. Remember, right as he's doing this redlined version of the report, he is looking at the standards in the use of force policy, and that ties in with his 24 prior instances in which he has properly used force and properly reported force. And as to 403, as to the risk of unfair prejudice, we think it's low for two main reasons. Number one, the overwhelming focus of this evidence was that these were all proper uses of force. There was no attempt to suggest otherwise. There was no argument by us concerning any of the underlying details in these reports concerning the use of force, with the one exception of an incident in which Mr. Finnety used a baton in circumstances that were radically different from those here. Somebody was actively punching him. So this is a guy who knows the rules of the road. But the jury had the reports with the underlying details. It's true, but this is where we get to my second Rule 403 point, and that is the cautionary instructions, which were so comprehensive and thorough on this point that the jury was not to concern itself with the underlying details of these reports. The reports were being used, the judge said. He said, this case is not about whatever happened in these different episodes. The jury would consider the reports on the issue of, quote, the defendant's familiarity with report writing and review process and how the system works. The underlying details of the reports, said the judge, would not be explored except in one instance, the baton instance, and also as to certain phrases or language that is used in the reports. And then the judge concluded by saying, the purpose here is not what happened in any of these incidents, and there's no suggestion and there's not going to be any argument that the defendant did anything wrong or that the use of force was improper. In their totality, these instructions would have prevented the jury, unless they disregarded the instructions, which we can't assume they did, from just sort of doing a free-ranging, roving through the reports, and then sort of using them as a basis for saying, well, this is a guy who, you know, uses force a lot, and therefore we can conclude that he's the sort of fellow who would help a fellow officer fabricate an arrest report concerning the use of force. That sort of propensity inference was never, ever, ever made by us at all in our argument. It wasn't baked into the evidence either. Our argument on this subject consisted of literally five sentences in our closing, which all trained on the legitimate uses of this evidence and not on any sort of propensity. But that included wording, as I understand it. Right. So we made the argument to the jury that the 24 prior instances of use of force reporting show that this is somebody who knows the language, the sort of language that is used to justify a use of force. So why didn't Bartlett's prior use get in under the same justification? Well, it did, actually. So you're referring to an issue that hasn't been mentioned yet. But Bartlett's, ultimately the judge actually allowed the defense to cross-examine Bartlett on all the details of that report. The report was, the government objected to the report going into evidence, and that was sustained. Well, be careful. It actually wasn't because what the judge said in the end was, I'm changing my mind, I'm going to let the defense mine all the details of this report on cross-examination, and you will need to convince me after that whether you need that paper report in. And the defense never thereafter asked the judge to enter that report, and there's an obvious reason why, because there is nothing in the paper report that wasn't already mined in cross-examination. Are you saying there was no objection by the government? I'm sorry? Are you saying there was no objection by the government? No, there was an objection to the admission of the report. The judge ultimately made a compromise ruling saying, I'm going to allow the defense to get into all the details of that report on cross-examination of Bartlett, and you will need to thereafter convince me that the paper report should come in. And the defense, if you look at the sequence of events, the defense mined all the details, all the relevant details in that report on cross-examination, and the effort fell flat because in rebuttal what we were able to establish through Bartlett is that none of the key false phrases that Finnerty inserted into the report here were present in that 2006 report prepared by Bartlett. And as soon as we made that point and all the wind fell out of the sails of the defense argument, they never sought to persuade the judge that the paper report should come in, because number one, they had mined all the details of that report, and number two, the argument was going nowhere. We had just defeated it in rebuttal. So, you know, that's an issue that obviously is also harmless error because, again, we make the point in the red brief, all the details concerning this 2006 report came in on cross. There was nothing further in the paper report. The defense doesn't punch back on that in the reply brief, unless there are further questions. We'll rest on our brief. Thank you, counsel, at this time. Would counsel for the appellant please reintroduce himself on the record? He has a two-minute rebuttal. Martin Weinberg for the appellant. First, the trial judge in his denial of the Rule 29C said this was a close case. He said the jury could well have found errors of judgment, could well have found a lack of intent. This was not a one-sided prosecution in terms of whether or not the inserts into the Bartlett report were done in violation of the statute. But, of course, the judge on Rule 29 applied the standard for Rule 29, which is different than applying harmless error or even applying plain error. Second of all, the judge's phrase unjustified force was in contrast to the evidence, which was transit authority guidelines, the model for where the transit authority allows batons to be used. It had nothing to do with FBI guidelines, which were not introduced and were not part of the evidence. The defense was prevented from arguing in a meaningful way that there was no jurisdiction because of instructions saying anything that's possibly a civil rights violation. It would have been futile. Do you want to touch on the Bartlett report issue?  The government says a number of things, but one of which is that it was the defense's obligation to bring up and to ask for that report to be admitted into evidence. They did pretrial, and the government said, no, that would open up propensity of Mr. Bartlett. And the government vigorously opposed a pretrial motion to admit one report on Bartlett because of the propensity risk. Then the judge sort of says, actually, I've rethought this. Why don't you do cross-examination? And I'll think again about whether to admit the report itself. And we have the same framework here because Deputy Superintendent Reynolds was allowed to testify without dispute, without objection, regarding the 24 reports. They didn't need the exhibits, and because Officer Gonzalez gave the government undisputed testimony regarding the familiarity and knowledge of Sergeant Finnerty. But lastly, if I could burden the court, the government says there was never any suggestion of propensity. But here's the words on cross-examination. We're all about the skill of Sergeant Finnerty in being able to justify use of force reports. I think it's in Appendix 998 to 1000. And then in final argument, there was the focus not on the fact that Finnerty knew how to use force in terms of when to limit force consistent with guidelines. It was all about he knew how to draft reports because words matter. And that is just one step away from a straight use of the 24 reports to show that it would have been in character for him to assist Bartlett in the 25th report. And that's what 404B and its accompanying 403 prevents. Thank you very much. Thank you, Counsel. That concludes argument in this case.